UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X

RODNEY FREEMAN,

                   Petitioner,

         ·v·

DAWSON BROWN,

                  Respondent.

------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: JUL 1 4 2014

10 Civ. 996 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

On October 19, 2009, petitioner Rodney Freeman ("petitioner" or "Freeman") filed a petition for a writ of habeas corpus against Dawson Brown in the Western District of New York. (ECF No. 1.) On March 2, 2010, the petition was transferred to this district. (ECF No. 4.) On April 20, 2011, petitioner filed an amended petition. (ECF No. 29.)

For the reasons set forth below, the Court hereby DENIES petitioner's request for habeas relief.

I.    FACTUAL BACKGROUND

    a.  The Underlying State Prosecutions

At approximately 1:30 a.m. on December 5, 2000, petitioner and three accomplices attempted to rob a parking garage attached to a residential building located at 351-353 East 83rd Street in Manhattan, New York. (Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus ("7/2/10 Opp'n") at 4, ECF No. 40, Feb. 21, 2014.[1]) Petitioner previously worked at the garage and was

---

[1] This filing is not properly paginated. The Court has re-numbered the pages for ease of reference.

familiar with its security measures. (Id.) The plan was for one of petitioner's accomplices to convince the garage attendant to open the security gate; the others would drive in behind her and steal the proceeds kept there. (Id.)

As it happened, petitioner's accomplice persuaded the attendant to open the gate, but the attendant quickly closed it before petitioner could drive inside. (Id.) Petitioner then approached the garage entrance and told the attendant that he knew one of the attendant's co-workers at the garage, at which point the attendant opened the gate. (Id.)

Once inside, petitioner got out of his car and attempted to rob the attendant. (Id.) When the attendant resisted, petitioner signaled for his other two accomplices to provide support. (Id.) One of petitioner's accomplices broke a bottle over the attendant's head; the attendant continued to resist, and the other accomplice punched him. (Id.)

The attendant escaped into the attached residential building, where he collapsed and was later found by the police unconscious and bleeding.[2] (Id. at 5.) Early in the morning of December 6, 2000, petitioner's accomplices were arrested. (Id.) Petitioner escaped and remained at large until he was arrested for an unrelated incident on February 16, 2001. (Id.)

On June 21, 2001, by New York County Indictment Number 3701/01, petitioner and two of his accomplices were each charged with one count of Burglary in the First Degree (Penal Law § 140.30(2)), one count of Attempted Robbery in the First Degree (Penal Law §§ 110/160.15(3)), two counts of Attempted Robbery in the

_____

[2] The attendant suffered permanent hearing loss as a result of the incident. (7/2/10 Opp'n at 5.)

Second Degree (Penal Law §§ 110/160.10(1) & (2)(a)), one count of Gang Assault in the Second Degree (Penal Law § 120.06), and one count of Assault in the Second Degree (Penal Law § 120.05(2)).  (Id.)

On January 9, 2002, petitioner pled guilty to Burglary in the First Degree and Attempted Robbery in the Second Degree (hereinafter, "the underlying crimes").  (Id.; Plea Tr. 21-32, ECF No. 42, Apr. 13, 2012.[3])  The court allowed petitioner to remain free on bail pending sentencing.  (Plea Tr. 30.)

On February 25, 2002, petitioner failed to appear for sentencing; the court issued a bench warrant.  (7/2/10 Opp'n at 6.)  Petitioner remained a fugitive until he was arrested in Maryland – where he had moved – after an apparent domestic dispute.  (Sentence I Tr. 6, ECF No. 42, Apr. 13, 2012.[4])

On November 15, 2004, petitioner was involuntarily returned to New York state court.  (Memorandum of Law in Opposition to Petitioner for a Writ of Habeas Corpus ("8/18/11 Opp'n") at 3, ECF No. 71, Feb. 21, 2014.)

On January 4, 2005, petitioner was sentenced for the underlying crimes.  (7/2/10 Opp'n at 8.)  At sentencing, the judge began by stating that petitioner had originally been promised two concurrent prison terms of five years.  (Id.)  The State recommended that petitioner be sentenced to eight years, however, on the basis, inter alia, that he had jumped bail in violation of his plea agreement.  (Id.)  The trial court imposed a sentence of five-and-one-half years' imprisonment for the first-degree burglary count and four years imprisonment for the attempted second-

---

[3] The January 9, 2008 Plea Transcript begins on ECF page 154 of Document No. 42.
[4] The January 4, 2005 Sentencing Transcript begins on ECF page 186 of Document No. 42.

degree robbery count. (Id. at 8.) The sentences were imposed concurrently and were to be followed by five years of post-release supervision. (Id.)

On March 16, 2005, petitioner's sentence of imprisonment began. (Id.)

Almost exactly two years later, on March 20, 2007, by New York County Indictment Number 1256/2007, petitioner was charged with Bail Jumping in the First Degree, based on his failure to appear for sentencing for the underlying crimes. (8/18/11 Opp'n at 2.)

On October 12, 2007, petitioner proceeded to trial on the bail jumping charge. (Id.) On October 15, 2007, a jury found him guilty. (Jury Verdict Tr. 169-71, ECF No. 76, Feb. 21, 2014.[5]) On October 31, 2007, the court sentenced petitioner to a term of one-and-two-thirds to five years in prison, to run consecutively with the sentences imposed for the underlying crimes. (Sentence II at Tr. 9, ECF No. 76, Feb. 21, 2014.)[6]

---

[5] The last day of the bail jumping trial transcript (which includes the jury's verdict) begins on ECF page 15 of Docket No. 46.

[6] At the start of trial, petitioner represented himself pro se and had counsel acting as a legal advisor. (See Voir Dire Tr. 18, ECF Nos. 72-75, Feb. 21, 2014 (with the voir dire transcript beginning on ECF page 19 at Docket No. 72).) Petitioner represented himself during voir dire and opening statements. (See Trial Tr. 15-16, ECF No. 75, Feb. 21, 2014 (with opening statements beginning on ECF page 14 of Docket No. 75).) Thereafter, petitioner requested that his counsel proceed with cross-examination. (Id.) At the start of the second day of trial, petitioner sought to dismiss his counsel and again proceed pro se; his request was denied. (See Trial Tr. 110, ECF No. 76, Feb. 21, 2014).) Soon thereafter, the trial court removed petitioner for unruly conduct. (Id. at 112-15.) Petitioner was thus represented by counsel, without petitioner present, for the remainder of the trial. (Id. at 115-66.) Petitioner was allowed back into the courtroom for the jury's verdict. (Id. at 166-68.)

At sentencing, petitioner proceeded pro se, with counsel present as his legal advisor. (Sentencing II Tr. 3-4.)

Petitioner argued on appeal that he was impermissibly deprived of his right to be present during portions of his bail jumping trial. (Declaration in Opposition to Petitioner for Writ of Habeas Corpus ("Gill 8/19/11 Decl."), Ex. A, ECF No. 77, Feb. 21, 2014.) Petitioner does not raise this argument in his present petition, however, and thus the Court need not address it.

4

b. Petitioner's Post-Judgment Challenges to the Underlying Crimes

i. Direct Appeal

In February 2007 – the exact date is unclear – petitioner, represented by counsel, filed his appeal brief. (7/2/10 Opp'n at 8; Declaration in Opposition to Petition for a Writ of Habeas Corpus ("Gill 7/2/10 Decl."), Ex. A, ECF Nos. 78-79, Feb. 21, 2014.) He argued that he did not waive his right to appeal and that his sentence was excessive. The State filed a brief in opposition later that month. (Gill 7/2/10 Decl., Ex. B.)

On May 1, 2007, the First Department affirmed petitioner's conviction and denied petitioner's request to file a pro se supplemental brief. (Id., Ex. C.)

By letter dated May 10, 2007, counsel for petitioner sought permission to appeal the First Department's decision to the New York Court of Appeals, and, by letter dated June 4, 2007, counsel for petitioner supplemented the original application for leave. (Id.) Counsel explained that his client sought leave to appeal "any and all issues decided by the Appellate Division," but specifically addressed the First Department's refusal to accept petitioner's pro se supplemental briefs in the letter. (Id.) On July 26, 2007, the New York Court of Appeals denied the request to appeal. (Id., Ex. E.)

ii. First Motion to Vacate Judgment

By motion filed December 29, 2006, petitioner, representing himself pro se, moved pursuant to New York Criminal Procedure Law § 440.10 to vacate the judgment on the grounds that he had not entered his plea voluntarily and that he

had received ineffective assistance of counsel, insofar as his attorney had failed to inform him that the attempted robbery charge would be included in the plea. (Id., Ex. F.) Petitioner further argued that his attorney had instructed him that he needed to answer in the affirmative to all of the trial judge's questions in order to avoid a 25-year prison sentence. (Id.)

The State opposed petitioner's motion (id., Ex. G[7]), and on April 6, 2007, petitioner filed his reply. (Id., Ex. H.) On April 24, 2007, the motion was denied in a one-sentence order: "It is clear from the minutes that [defendant] pled and understood he was pleading to [two] counts." (Id., Ex. I.) Petitioner subsequently sought a certificate of leave to appeal;[8] on October 9, 2007, the First Department denied that application. (Id., Ex. J.)

### iii. Second Motion to Vacate Judgment

By motion dated February 5, 2008, petitioner again moved the trial court to vacate the judgment pursuant to § 440.10, arguing: (1) counsel provided ineffective assistance by coercing petitioner to plead guilty; (2) petitioner's plea was not knowing and voluntary; (3) the attempted robbery plea must be vacated because it was not part of the original plea agreement; and (4) the prosecutor engaged in misconduct. (Id., Ex. K.) The State filed an opposition dated May 6, 2008, arguing that petitioner's motion should be summarily denied. (Id., Ex. L.) On June 2, 2008, the trial court denied petitioner's motion. (Id., Ex. M.)

---

[7] Only a portion of State's affirmation in opposition to petitioner's § 440.10 motion is included in the record. (See Gill 7/2/10 Decl., Ex. G.)

[8] Petitioner's application for leave to appeal to the First Department is not contained in the record.

6

Petitioner filed leave to appeal,[9] and on August 19, 2008, the First Department denied petitioner's request.  (Id., Ex. N.)[10]

### iv.  Coram Nobis Petition

By papers dated October 16, 2008, petitioner moved in the First Department for a writ of error coram nobis.[11]  (Id., Ex. O.)[12]  Petitioner claimed that his appellate counsel was ineffective for not arguing that the indictment was jurisdictionally defective and that the evidence was insufficient to convict petitioner of the underlying crimes.  (Id.)  Specifically, petitioner contended that his appellate counsel failed to address the following issues:  (1) petitioner was licensed to be on the premises and thus the facts did not establish burglary; (2) petitioner lacked the requisite intent to commit the crimes; (3) petitioner's entry into the parking garage was not unlawful because the garage was open to the public; and (4) the parking garage was not a dwelling, negating one of the elements of first-degree burglary.  (Id.)  In connection with this motion, petitioner attached a series of documents intended to provide a factual basis for his allegations.  (Id.)

On November 7, 2008, the State filed its opposition (id., Ex. P), and on November 24, 2008, petitioner filed a reply and a notice of motion for leave to amend (which appears to have been received on December 5, 2008).  (Id.)  On December 30, 2008, the First Department denied the motion.  (Id., Ex. Q.)

---

[9] Again, petitioner's request for leave to appeal is not included in the record.

[10] The First Department's denial appears to have been "entered" on September 2, 2008.  (Gill 7/2/10 Decl., Ex. N.)

[11] A petition for a writ of error coram nobis is "directed to a court for review of its own judgment and predicated on alleged errors of fact." Black's Law Dictionary (9th ed. 2009), coram nobis.

[12] These papers appear to have been received on October 28, 2008.  (Gill 7/2/10 Decl., Ex. O.)

Petitioner did not file an application for leave to appeal that denial to the New York Court of Appeals. (7/2/10 Opp'n at 10; see also 9/6/11 Opp'n at 3-5.)

### v. Third Motion to Vacate Judgment

By papers dated January 13, 2009, petitioner filed a third motion to vacate judgment pursuant to § 440.10. (Gill 7/2/10 Decl., Ex. R.) Petitioner claimed that his attorney coerced him into pleading guilty to the burglary count and failed to raise certain potentially valid defenses on his behalf. (Id.) On May 15, 2009, the state court denied the motion. (Id., Ex. Q.) The court held that petitioner could have raised his arguments on his prior motions and rejected petitioner's claims on the merits as well. (Id., Ex. R.) Petitioner sought a certificate of leave to appeal the denial of the motion; on August 18, 2009, the Appellate Division denied his renewed application. (Id., Ex. S.) Petitioner moved to reargue that denial, but on October 2, 2009, the trial court denied that request. (Id., Ex. R.)

### c. Petitioner's Post-Judgment Challenges to the Bail Jumping Conviction

#### i. Direct Appeal

On or about September 29, 2008, petitioner appealed his conviction for bail jumping to the First Department. (Gill 8/19/11 Decl., Ex. A.) In his appellate brief, prepared with the assistance of counsel, petitioner argued that he was improperly denied his right to be present at trial and that the verdict was against the weight of evidence. (Id.) Petitioner filed a supplemental brief, prepared pro se, arguing that his due process rights were violated as a result of the pre-indictment delay and that

he was the victim of vindictive prosecution. (Id., Ex. B.) In April 2010,[13] the State filed its opposition. (Id., Ex. C.) By submission dated May 1, 2010, petitioner replied pro se. (Id., Ex. D.)

On June 15, 2010, the First Department affirmed petitioner's conviction, finding that petitioner failed to preserve his claim that he was denied his right to be present in the courtroom, and that in any event, his claim failed on the merits. (Id., Ex. E.) The First Department further held that the verdict was not against the weight of evidence and that "[t]he jury properly rejected defendant's meritless excuse for failing to appear for sentencing on his burglary conviction." (Id.) The First Department also noted that it considered and rejected petitioner's pro se claims, but that defendant's related challenge to the court's jury charge was unpreserved and therefore the court would not consider it. (Id.)

On July 16, 2010, petitioner's counsel sought leave to appeal to the Court of Appeals of New York. (Id., Ex. F.) By supplemental brief dated August 12, 2010, petitioner put forth a pro se application in support of his request for leave to appeal. (Id., Ex. G.) Petitioner sought leave to appeal due to various issues regarding pre-indictment delay. (Id.) By letter dated August 25, 2010, the State filed a letter in opposition to petitioner's motion for leave to appeal. (Id., Ex. H.)

On December 23, 2010, the New York Court of Appeals summarily denied petitioner's application for leave to appeal. (Id., Ex. I.)

---

[13] The exact date of this filing is not clear from the record.

9

### ii.  Motion to Vacate Judgment

By pro se motion dated December 11, 2010, petitioner sought to vacate the judgment, arguing that his counsel had provided him ineffective assistance in failing to seek dismissal on the grounds of pre-indictment delay and vindictive prosecution.  (Id., Ex. J.)  On February 16, 2011, the State filed an opposition to the motion.  (Id., Ex. K.)

By decision dated March 1, 2011, the Supreme Court of the State of New York denied the motion as both procedurally barred and meritless.  (Id., Ex. L.)  In a motion dated March 13, 2011, petitioner, again representing himself pro se, requested re-argument on his motion to vacate judgment.  (Id., Ex. M.)  The Supreme Court of the State of New York denied that motion.  (Id., Ex N.)  By letter dated April 6, 2011, petitioner applied for leave to appeal in the First Department.  (Id., Ex. O.)  With a decision dated May 18, 2011 and entered June 7, 2011, the First Department denied petitioner's application.  (Id., Ex. P.)

## II.  PROCEDURAL HISTORY OF THIS PETITION

On October 19, 2009, petitioner commenced the present action by filing a petition for writ of habeas corpus in the Western District of New York.  (ECF No. 1.)  On October 27, 2009, the Honorable Charles J. Siragusa transferred the petition to the Southern District of New York as a more convenient forum.  (ECF No. 3.)  The matter was assigned to the Honorable Laura Taylor Swain, who referred it to Magistrate Judge Ronald L. Ellis for further proceedings.  (ECF No. 5.)  On July 2,

2010, the State filed its opposition to the petition, and on October 15, 2010, the habeas petition became fully briefed. (ECF Nos. 11, 12, 15.)[14]

On April 20, 2011, petitioner filed an amended petition. (ECF No. 29.) On August 19, 2011, the State filed papers in opposition (ECF Nos. 35-37), and on September 6, 2011, petitioner filed a reply. (ECF No. 39.)

On November 16, 2011, the matter was transferred to the undersigned, but the referral to Judge Ellis remained in place. (ECF No. 40.)

By letter dated October 20, 2012, petitioner stated: "I will be released from prison onto parole supervision on October 30, 2012." (ECF No. 50.) Petitioner requested that his petition be amended to include an additional respondent: Andrea Evans, the Chairwoman of the New York State Division of Parole.[15] On November 8, 2012, the Court received petitioner's updated address. (ECF No. 51.)

On May 2, 2013, Judge Ellis issued a Report and Recommendation recommending that the Amended Petition be denied. (ECF No. 52.) On June 6, 2013, petitioner filed a series of objections to that Report. (ECF No. 55.)

On December 4, 2013, this Court denied petitioner's request for habeas relief with leave to renew on a more developed record, if appropriate. (ECF No. 61.) By motion dated January 4, 2014, petitioner filed a motion for relief from judgment and

---

[14] On February 7, 2011, Judge Ellis ordered that the parties appear for an evidentiary hearing to determine whether petitioner's guilty plea was done knowingly and voluntarily. (ECF No. 17.) On April 4, 2011, the United States Supreme Court decided Cullen v. Pinholster, clarifying the circumstances under which federal courts should hold evidentiary hearings on habeas review. – U.S. – , 131 S.Ct. 1388, 1400 (2011). On April 7, 2011, Judge Ellis adjourned the hearing. (ECF No. 26.)
[15] Tina M. Stanford is the current Chairwoman of the Division of Parole.

11

provided details regarding the nature of his parole.[16]  (ECF No. 64.)  On January 22,

2014, the Court, construing petitioner's motion as one for reconsideration, granted

reconsideration in light of the new information provided by petitioner.[17]  (ECF No.

65.)

   The Court now considers the merits of petitioner's claims.  Petitioner sets

forth what amount to three basic claims.  First, petitioner alleges that his guilty

plea was unknowing, involuntary, and unintelligent because his counsel:  (1) misled

him into thinking that the second degree attempted robbery charge would not be

included in the guilty plea; (2) coerced him into pleading guilty by telling him that

he had to answer all of the judge's questions in the affirmative during the plea; and

(3) failed to advise him of the requisite elements of first-degree burglary under New

York law (according to petitioner, had he been properly informed of the elements of

the charge, he would not have pled guilty because he does not believe his conduct to

be covered).  (Am. Pet. at 12-13, ECF No. 29, Apr. 20, 2011.)

   Second, petitioner alleges that he received ineffective assistance of counsel

because:  (1) his trial counsel for the underlying crimes permitted petitioner to plead

guilty to first degree burglary even though his conduct did not satisfy the

requirements of that offense (id. at 13-14); (2) his appellate counsel for the

underlying crimes argued only that the sentence imposed was excessive (id. at 14-

---

[16] On April 10, 2014, the State filed a letter in which it waived any objection to reconsideration and conceded that, because petitioner is on parole, he is still "in custody" for the purposes of his petition for habeas relief.  (ECF No. 82.)

[17] On January 2, 2014, petitioner filed a notice of appeal.  (ECF No. 63.)  Subsequent to the Court's determination on his motion for reconsideration, he requested that his appeal be held in abeyance so that this Court could consider the merits of his habeas petitioner.  On February 10, 2014, the Second Circuit dismissed the appeal without prejudice and remanded the matter to this Court.  (ECF No. 67.)

15); and (3) his bail jumping trial counsel failed to raise the issues of pre-indictment delay and vindictive prosecution. (Id. at 18.)

Third, petitioner alleges prosecutorial misconduct in both the underlying crimes and the bail jumping proceedings. (Id. at 16-17.) In the underlying crimes proceeding, the prosecutor allegedly promised petitioner that he would be required only to plead guilty to the burglary charge but subsequently "forced [petitioner] into pleading guilty" to the attempted robbery charge as well. (Id. at 16.) In the bail jumping proceeding, petitioner alleges that the State maliciously prosecuted him for challenging his conviction in the underlying action. (Id. at 17.)

III.   TIMELINESS

Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), state prisoners seeking habeas review must adhere to a one-year statute of limitation. 28 U.S.C. § 2244(d)(1) (A); see, e.g., Atkins v. Gonyea, No. 12 Civ. 9186, 2014 WL 199513, at *1 (S.D.N.Y. Jan. 17, 2014); Simmons v. Brown, No. 08 Civ. 1425, 2011 WL 2133844, at *5 (E.D.N.Y. May 26, 2011); Ruiz v. Poole, 566 F. Supp. 2d 336, 340 (S.D.N.Y. 2008). Generally, the statute begins to run on "the date on which the [petitioner's] judgment [of conviction] became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). "[A] conviction becomes final 90 days after the highest court affirms the conviction, assuming no petition for a writ of certiorari is filed." Smith v. Lee, No. 11 Civ. 8376, 2013 WL 2467988, at *7 (S.D.N.Y. June 7, 2013) (citing 28 U.S.C. § 2244(d); S.Ct. R. 13(1)). However, AEDPA provides that "[t]he time during which

13

a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2); Acosta v. Artuz, 221 F.3d 117, 119 (2d Cir. 2000).

In this case, the First Department affirmed the underlying judgment on May 1, 2007.  On July 26, 2007, petitioner's application for leave to appeal to the Court of Appeals was denied.  Accordingly, petitioner's conviction became final on October 24, 2007, when the time for seeking a writ of certiorari to the Supreme Court expired.  The statutory filing period was tolled, however, during the pendency of any proper state court applications for post-conviction relief.[18]

Petitioner's first post-conviction motion was filed on December 20, 2006; it was pending until October 9, 2007, when leave was denied.  On February 5, 2008, petitioner filed his second post-conviction motion; it was pending until leave was denied on August 19, 2008.  Petitioner filed his third motion for post-conviction relief on October 16, 2008; it was pending until it was denied on December 30, 2008. On January 13, 2009, petition filed his fourth motion for post-conviction relief; it was pending until October 2, 2009, when the New York Supreme Court denied his application for re-argument.[19]

As a result, assuming petitioner's habeas petition was submitted the same day it was signed – October 8, 2009 – only 182 days of the one-year period provided

---

[18] In the absence of tolling, petitioner's time to file a habeas petition would have expired on October 24, 2008.

[19] Even were the Court were to find that the motion for re-argument was not properly filed and thus, the pendency of that application did not toll during that time, petitioner's habeas petition would nonetheless be timely.

14

for in AEDPA had elapsed as a matter of law.[20]  Thus, the original habeas petition was timely.

Petitioner's amended petition – which contained his request for habeas relief on the bail jumping conviction – was also timely.  Petitioner's bail jumping conviction was affirmed by the First Department on June 15, 2010, and petitioner's application for leave to appeal to the Court of Appeals was denied on September 23, 2010.  Petitioner's bail jumping conviction thus became final 90 days later, on December 22, 2010.  Since the amended petition was dated April 14, 2011, it is timely under AEDPA.

IV.   EXHAUSTION

Pursuant to the AEDPA, a petitioner must have "exhausted the remedies available in the courts of the state" unless there is "an absence of available [s]tate corrective process."  28 U.S.C. § 2254(b)(1)(A), (B)(i).  "Exhaustion of state remedies requires that a petitioner fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  Carvaial v. Artus, 633 F.3d 95, 104 (2d Cir. 2011) (internal quotation marks, alteration, and citation omitted) (explaining that the exhaustion requirement "is animated by" principles of comity).  "If a habeas applicant fails to exhaust state remedies by failing to adequately present his federal claim to the state courts so that the state courts would deem the claim procedurally barred," that claim is not available for habeas review.  Id. (citation omitted).

---

[20] The mailbox rule applies – the petition is deemed to have been filed on the date petitioner submitted it to correctional authorities to mail to the Court.  See Houston v. Lack, 487 U.S. 266, 270 (1988); Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001), cert. denied, 534 U.S. 886 (2001).

To overcome procedural default, a petitioner must demonstrate "'cause for the default and prejudice' or show[] that he is 'actually innocent' of the crime for which he was convicted." Id. (quoting Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001)).

Here, petitioner has exhausted all of his claims except for his ineffective assistance of appellate counsel claim. With respect to that claim, petitioner raised it before the First Department in his writ of coram nobis petition, but failed to appeal it to the New York State Court of Appeals. Thus, the New York Court of Appeals had no opportunity to rule on the issue.

Petitioner does not dispute that he failed to raise this issue before the Court of Appeals. Instead, petitioner argued (in connection with his initial petition) that his failure to exhaust should be excused because the prison law library he relied upon to prepare his filings had not been updated to reflect a 2002 change in the law that allowed for an appeal to the New York Court of Appeals. (See Memorandum of Law in Response to Respondent's Opposition to Petitioner for a Writ of Habeas Corpus ("10/15/10 Mem.") at 4-5, ECF No. 15, Oct. 15, 2010). Petitioner explains:

> At the time of the petitioner's initial submission of his writ of error coram nobis in the state court, the [p]etitioner's prison law library failed to possess the updated pocket parts needed that would have sufficiently alerted me that the writ of error coram nobis is appealable to the New York State Court of Appeals. Petitioner was under the impression during his research in 2008 that an order denying a writ of error coram nobis in the Appellate Division, cannot be appealed to the Court of Appeals. Before November[] 2002, this was the case until New York's Laws were repealed, however the Law Library at petitioner's [place of incarceration was] not sufficiently updated, at least to the petitioner's knowledge, because if he were aware that he could have

16

> requested leave to appeal to the Court of Appeals when
> the Appellate Division summarily denied his writ, then
> leave would have certainly been requested.

(Id.)

As stated above, in order for petitioner to overcome this procedural default,

petitioner must demonstrate either: (1) "cause" for the default and that actual

"prejudice" would result were the Court to bar the claim, or (2) that the failure to

consider petitioner's claim would result in a "fundamental miscarriage of justice."

Schlup v. Delo, 513 U.S. 298, 314 (1995).

Here, even were petitioner to have shown cause due to insufficiencies in the

law library (an issue which the Court does not take up), he has failed to show that

actual prejudice would result were the Court to bar the claim.  As explained infra,

petitioner's ineffective assistance of appellate counsel claim fails as a matter of law.

Similarly, petitioner cannot show that barring the claim would result in a

"fundamental miscarriage of justice" – petitioner has put forth no evidence

suggesting that he is actually innocent of the crimes for which he was incarcerated.

McQuiggin v. Perkins, – U.S. – , 133 S. Ct. 1924, 1931 (2013).[21]  Indeed, he does not

seem to dispute the actions he was alleged to have taken.  As such, there is no

reason to allow petitioner's ineffective assistance of appellate counsel claim to

survive despite petitioner's procedural default.[22]

V.    STANDARD OF REVIEW

---

[21] To the extent that petitioner believes he is "actually innocent" of the crime of burglary because his conduct does not satisfy the elements of the crime, this claim is unavailing.  (See infra.)
[22] The Court nonetheless considers this claim in the merits portion of this decision.

AEDPA requires that in order for a petitioner to prevail on a petition for habeas corpus, he must demonstrate that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). A petitioner demonstrates that a state court's decision is contrary to clearly established federal law "by demonstrating either (1) that the state court reached a conclusion of law that directly contradicts a holding of the Supreme Court, or (2) that, when presented with 'facts that are materially indistinguishable from a relevant Supreme Court precedent,' the state court arrived at a result opposite to the one reached by the Supreme Court." Evans v. Fischer, 712 F.3d 125, 132-33 (2d Cir. 2013) (quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)). A petitioner demonstrates that a state court decision was based on an unreasonable application of federal law by proving that the state court "unreasonably applied" federal legal principles "to the facts of the case before it . . . involv[ing] some increment of incorrectness beyond error." Id. at 133 (internal quotation marks and citation omitted).

Those seeking habeas relief face a high burden and a reviewing court must give state court decisions due deference. See Harrington v. Richter, – U.S. – , 131 S.Ct. 770, 786-87 (2011) ("If this standard is difficult to meet, that is because it was meant to be."); Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (noting that Section 2254's "highly deferential" standard "demands that state-court decisions be given

18

the benefit of the doubt"). Indeed, state court decisions are presumed to be correct, and petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Habeas will not be granted "merely because there is a reasonable possibility that trial error contributed to the verdict . . . ." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (internal quotation marks and citations omitted omitted); see also Perkins v. Herbert, 596 F.3d 161, 179 (2d Cir. 2010)).

VI.    MERITS

       a.  Knowing and Voluntary Guilty Plea

       In this case, petitioner argues that his guilty plea was not knowing and voluntary for three reasons: (1) his counsel told him he would only need to plead guilty to the robbery charge; (2) his counsel instructed him to respond in the affirmative to all questions posed by the state court trial judge; and (3) his counsel and the trial judge misapprehended an element of first degree burglary.

       "A guilty plea is constitutionally valid if it represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Panuccio v. Kelly, 927 F.2d 106, 110 (2d Cir. 1991) (internal quotation marks and citation omitted); see also Brady v. United States, 397 U.S. 742, 748 (1970) (explaining that pursuant to the Due Process Clause of the United States Constitution, a trial court can only accept a guilty plea that is voluntary, knowing, and intelligent; to be constitutional, a defendant must have "sufficient awareness of the relevant circumstances and likely consequences"); United States v. Adams, 448

19

F.3d 492, 497 (2d Cir. 2006) ("[A] guilty plea waives important rights, and therefore it is only valid if done voluntarily, knowingly, and intelligently, with sufficient awareness of relevant circumstances and likely consequences") (internal quotation marks and citations omitted).

A "plea of guilty entered by one fully aware of the direct consequences of the plea is voluntary in a constitutional sense unless induced by threats, misrepresentations, or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business." Bousley v. United States, 523 U.S. 614, 619 (1998) (internal alteration, citations, and quotation marks omitted). "As a general matter, a plea is deemed 'intelligent' if the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way . . . ." Millger v. Angliker, 848 F.2d 1312, 1320 (2d Cir. 1988). "A defendant must [ ] receive real notice of the true nature of the charge against him, as well as a description of the critical elements of the offense [ ]." Panuccio, 927 F.2d at 110 (internal quotation marks and citation omitted).

### i.  Addition of the Burglary Charge to the Plea Agreement

First, petitioner argues that his guilty plea was unknowing and involuntary because his counsel told him he would only be pleading guilty to the robbery charge; petitioner claims he was under the impression that the attempted burglary charge would not be included in his plea agreement.  (Am. Pet. at 12.)

A review of the record reveals that petitioner was clearly advised of – and

accepted – that he was pleading guilty to <u>both</u> the burglary and attempted robbery

charges:

> THE COURT: Mr. Freeman, is it your wish now to
> withdraw your previously entered plea of not guilty and to
> enter a plea of guilty to two counts, that being Count
> Number 1, burglary in the first degree, and under Count
> 3, to attempted robbery in the second degree, in full
> satisfaction of the indictment now before the Court? Is
> that what you wish to do?

> MR. FREEMAN: Yes.

(Plea Tr. 23.) Petitioner's counsel similarly advised the Court that his client wished

to plead guilty to both counts. (<u>Id.</u> at 21.) Counsel stated: "I have discussed with

my client how to proceed in this matter, and he's instructed me to withdraw his

previously entered plea of not guilty . . . and in satisfaction of that indictment to

enter a plea to Counts 1 and 3 in full satisfaction of that six count indictment." (<u>Id.</u>)

During his plea allocution, petitioner stated he had discussed the case and his plea

with his attorney, that he had not taken any kind of medication, and that no one

forced or threatened him into pleading guilty. (<u>Id.</u> at 24.)

Petitioner confirmed for the court that "on or about December 5, 2000, he

knowingly entered and remained unlawfully in the dwelling located at 351 East

83rd Street with the intent to commit a crime therein." (<u>Id.</u> at 26.) Petitioner

acknowledged that "when in effecting entry and while in the dwelling and

immediate flight therefrom, a participant in the crime caused physical injury to an

individual . . . who was not a participant in the crime." (<u>Id.</u>) He recognized that the

21

dwelling was a garage attached to an apartment building and admitted that he was planning to rob the attendant stationed there. (Id. at 26-27.) Petitioner admitted that during the incident, his role was "to actually take the money away from the attendant," i.e., "[t]o rob the attendant[.]" (Id. at 27.)

Thus, while petitioner now contends that he did not realize he was going to be required to plead guilty to the attempted robbery charge, petitioner's allocution establishes unequivocally that at the plea itself, he was adequately advised and knew that to which he was pleading. Accordingly, petitioner's claim that he did not knowingly and voluntarily plea to attempted robbery is unavailing.

### ii.  Counsel's Instruction to Respond in the Affirmative

As an additional claim, petitioner contends that his counsel advised him to say "yes" to whatever the state court judge said, rendering his guilty plea involuntary and unknowing. (Am. Pet. at 12.) This claim is without support.  First, the record belies petitioner's allegation – he conferred with counsel before answering at least one of the questions posed by the state court judge during his allocution. (Plea Tr. 24.) Second, petitioner confirmed in his allocution that he had not been coerced into pleading guilty. (Id.)

> THE COURT:  Has anyone forced you or threatened you in any way to get you to plead guilty?
>
> MR. FREEMAN:  No.

(Id.) Third, whatever advice petitioner received from his attorney, it did not deprive him of his volition or his ability to understand the court's warning that he would be pleading guilty to two counts, rather than just one.  The fact that he now states he

was told to respond affirmatively to any question from the trial court judge does not negate this fact. Accordingly, petitioner's claim here again fails.

### iii. Misapprehension of an Essential Element of the Crime of Burglary

In order for a plea to be executed intelligently, a defendant must be apprised of "the essential nature of the charge against him" prior to pleading guilty to that charge. Bousley v. United States, 523 U.S. 614, 618-19 (1998) (citations omitted). "If neither [the defendant], nor his counsel, nor the court correctly understood the essential elements of the crime with which he was charged," a defendant's plea "would be . . . constitutionally invalid." Id.; see also U.S. ex rel. Bryant v. Warden, FCI, 50 F. App'x 13, 16-17 (2d Cir. 2002).

Here, plaintiff argues that his counsel and the trial court misunderstood the proper definition of the term "dwelling." Petitioner argues:

> [C]ounsel and the trial court failed to advise petitioner that one of the elements that must be proven under burglary in the first degree would be to show that petitioner entered unlawfully "in a dwelling." Petitioner's crime did not occur "in a dwelling." Petitioner's crime occurred inside a 24 hour pay-to-park public parking garage.

(Am. Pet. at 12.) Petitioner contends that had he been appropriately advised of the "dwelling" element of the crime of burglary in the first degree, he would not have agreed to plead guilty because he does not believe that his crime occurred in a dwelling. (Id. at 12-13.)

23

Petitioner's argument is unavailing.  First, the record makes clear that the trial court did, in fact, advise petitioner of the essential elements of the crime.  The trial court stated:

> [I]t is alleged under Count 1 of the indictment that you acting together with Enrique Davila and N'Gina Cain in the County of New York on or about December 5, 2000 knowingly entered and remained unlawfully in the dwelling located at 351 East 83rd Street with intent to commit a crime therein, and when in effecting entry and while in the dwelling and immediate flight therefrom, a participant in the crime caused physical injury to an individual known to the Grand Jury who was not a participant in the crime.  Is that true, sir?

(Plea Tr. 26.)  In response, petitioner answered: "Yes."  (Id.)  With this exchange, petitioner was informed of the crime to which he was pleading guilty and its essential elements.  See Maltsev v. Albany Cnty. Prob. Dep't, 303 F. App'x 973, 974 (2d Cir. 2008) (upholding the validity of a plea where petitioner's plea allocution lacked "a specific reference to the crime's intent element," but nonetheless illustrated that petitioner's plea was knowingly and voluntarily executed).

Additionally, to the extent petitioner believes he had viable defenses to the charges but that he was not properly advised of these defenses prior to his guilty plea, this fact itself does not amount to a constitutional violation.  See Tollett v. Henderson, 411 U.S. 258, 267-68 (1973).  A defendant need not be apprised of every conceivable potential legal and factual argument that exists in his case in order to be deemed to have intelligently pled to a particular crime.  Id.  Indeed, "[c]ounsel's concern is the faithful representation of the interest of his client and such

representation frequently involves highly practical considerations as well as specialized knowledge of the law." Id.[23]

Moreover, petitioner's substantive argument regarding the meaning of the term "dwelling" fails as a matter of law.   At least under certain circumstances, a garage attached to a residential home may constitute a dwelling under New York State law.   See, e.g., People v. Rivera, 754 N.Y.S.2d 74, 76, 301 A.D.2d 787 (3d Dep't 2003) (collecting cases).[24]   In this case, the petitioner raised the "dwelling" issue for the state court (Gill 7/2/10 Decl., Ex. O ¶¶ 60-79); the court considered and rejected petitioner's arguments on this point.   (Id., Ex. R at 11-14.)   This Court will not undermine that determination under the circumstances of this case.   See Harrington, 131 S. Ct. at 786 ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court."); see also Burt v. Titlow, – U.S. – , 134 S.Ct. 10, 15 (2013).   Because the state court's interpretation of its own law on the definition of

---

[23] At some point, a counsel may so fail to apprise a defendant of the nature of the crime to which he is pleading that defendant would have a colorable ineffective assistance of counsel claim.  See Tollett, 411 U.S. at 268.

[24] By letter dated June 18, 2014, plaintiff filed a letter that notifies the Court of a decision by the New York Court of Appeals issued on June 12, 2014, People v. McCray, – N.E.3d – , 2014 WL 2608457 (2014).  In that case, the court considered "whether a burglary committed in the non-residential part of a building used partly for residential purposes should be treated as the burglary of a dwelling."  Id.  The court determined that "if a building contains a dwelling, a burglary committed in any part of that building is the burglary of a dwelling; but an exception exists where the building is large and the crime is committed in a place so remote and inaccessible from the living quarters that the special dangers inherent in the burglary of a dwelling do not exist."  This case illustrates that the "dwelling" issue is context-specific under state law.

the term "dwelling" is not so clearly out of line with state court law that it violated petitioner's due process rights, habeas relief is unavailable.

As a separate point, petitioner argues that he was not unlawfully in the parking garage because he did not enter by force. (Am. Pet. at 12-13.) This argument similarly fails. It is well-settled in New York that entry by means of deception or misrepresentation is not "licensed and privileged" for the purposes of the burglary statute. See, e.g., People v. Jamieson, 930 N.Y.S.2d 748, 749, 88 A.D.3d 1298 (4th Dep't 2011); People v. Griffin, 537 N.Y.S.2d 357, 358, 147 A.D.2d 897 (4th Dep't 1989); People v. Piro, 504 N.Y.S.2d 163, 164-65, 121 A.D.2d 748 (2d Dep't 1986).

In short, this Court has no grounds on which to conclude that petitioner lacked sufficient notice of the elements of the crime. Thus, the petitioner's guilty plea to the burglary charge was knowing, voluntary, and intelligent for purposes of habeas review.

### b. Ineffective Assistance of Counsel

Petitioner alleges ineffective assistance of counsel as a second ground for habeas relief. (Am. Pet at 13-15, 18.) The Supreme Court has established that to prevail on a claim for ineffective assistance of counsel, petitioner must show, first, "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and second, that the deficiencies were prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984).

The <u>Strickland</u> standard applies to claims of ineffective appellate counsel, as well.

<u>See</u> <u>Aparicio v. Artuz</u>, 269 F.3d at 95.

The Supreme Court has provided the following guidance to courts applying

the prejudice prong of <u>Strickland</u>:

> In assessing prejudice under <u>Strickland</u>, the question is
> not whether a court can be certain counsel's performance
> had no effect on the outcome or whether it is possible a
> reasonable doubt might have been established if counsel
> acted differently.  Instead, <u>Strickland</u> asks whether it is
> "reasonably likely" the result would have been different.
> This does not require a showing that counsel's actions
> "more likely than not altered the outcome," but the
> difference between <u>Strickland</u>'s prejudice standard and a
> more-probable-than-not standard is slight and matters
> "only in the rarest case."  The likelihood of a different
> result must be substantial, not just conceivable.

<u>Harrington</u>, 131 S.Ct. at 791-92 (internal quotation marks and citations omitted).

"A fair assessment of attorney performance requires that every effort be made to

eliminate the distorting effects of hindsight, to reconstruct the circumstances of

counsel's challenged conduct, and to evaluate the conduct from counsel's perspective

at the time." <u>Strickland</u>, 466 U.S. at 689 (internal quotation marks and citation

omitted).  "Because of the difficulties inherent in making the evaluation, a court

must indulge a strong presumption that, under the circumstances, the challenged

action might be considered sound trial strategy." <u>Id.</u>

### i.  Assistance in Burglary and Robbery Trial Proceedings

First, petitioner argues his trial court counsel proved ineffective assistance in

connection with his guilty plea.  (Am. Pet. at 13-14.)  Petitioner contends:

Defense counsel could have, but did not, argue that (1) the petitioner <u>did not</u> enter in a dwelling – a crucial element of N.Y. State's burglary in the first degree statute; (2) that the dwelling that petitioner purportedly entered unlawfully was actually that of a public place, thus, precluding any indictment and/or conviction for burglary in the first degree under N.Y. State's burglary statute[;] and[] (3) that the petitioner's conduct did not amount to constituting the crime of burglary in the first degree because, since the petitioner had the permission of the complainant to enter lawfully into the public parking garage – that the invitation precluded a guilty finding that petitioner unlawfully entered in a dwelling with regard to the statute of burglary in the first degree.

(Am. Pet. at 14.)[25] Petitioner went on to argue:

> Counsel's failure to raise these key issues which, if raised, would have [exonerated] the petitioner of burglary in the first degree, exhibits that counsel's representation of the petitioner fell far below an objective standard of reasonableness, within which that failed representation both prejudiced the petitioner's overall defense and affected the outcome of the plea process, since petitioner would never have pled guilty if he'd been made aware of his <u>actual innocen[c]e</u> with regard to the count charging burglary in the first degree.

(<u>Id.</u>)

According to the Supreme Court, "a guilty plea cannot be attacked as based

on inadequate legal advice unless counsel was not 'a reasonably competent attorney'

---

[25] In a supplemental filing, petitioner alleges that his counsel "intentionally told [petitioner] that he'd be receiving the same plea bargain as the others [defendants]," even though petitioner was in fact offered a plea bargain with different terms. (10/15/10 Mem. at 1-2.) Petitioner alleges that counsel misled him because counsel knew that, if petitioner was aware of the disparity, petitioner "would have either insisted upon receiving the same bargain in order to plead guilty, or he would have insisted upon going to trial." (<u>Id.</u>) Even assuming that petitioner's counsel actually made such a misrepresentation to petitioner, and assuming further that such misconduct would satisfy the first prong of <u>Strickland</u>, petitioner's claim on this point must fail because he has not demonstrated prejudice. 466 U.S. at 687. Petitioner's plea agreement imposed a five-year sentence (and the court consented to petitioner remaining out on bail prior to his sentencing); had petitioner gone to trial, he faced up to 25 years in prison. (Plea Tr. 21.) Moreover, the one-year disparity in plea agreements is not surprising given that petitioner allegedly masterminded the underlying crimes. (7/2/10 Opp'n at 2, 6; Sentence I Tr. 4.)

and the advice was not 'within the range of competence demanded of attorneys in criminal cases.'" Strickland, 466 U.S. at 687 (quoting McMann v. Richardson, 397 U.S. 759, 770-71 (1970)). Additionally, petitioner must show "a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial." Premo v. Moore, – U.S. – , 131 S. Ct. 733, 743 (2011) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). However, "hindsight cannot suffice for relief when counsel's choices were reasonable and legitimate based on predications of how the trial would proceed." Id. at 745 (citation omitted). "Self-serving statements" in the petition do not suffice. Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003) ("[O]ur precedent requires some objective evidence other than defendant's assertions to establish prejudice.").

Notably, in the context of a guilty plea, the fact that "there is no extended formal record and no actual history to show how the charged have played out at trial works against the party alleging inadequate assistance." Premo, 131 S.Ct. at 745. "There is a most substantial burden on the claimant to show ineffective assistance." Id. ("The plea process brings to the criminal justice system a stability and a certainty that must not be undermined by the prospect of collateral challenges in cases not only where witnesses and evidence have disappeared, but also in cases where witnesses and evidence were not present in the first place.").

Here, as outlined in the Court's discussion of petitioner's allegations pertaining to his guilty plea, petitioner's objections reflect, at most, potential ambiguities in state law, not clear misinterpretations or misapplications. Petitioner

has put forth well-reasoned and articulate arguments in support of what his defense could have been had he not pled guilty.  He has not shown, however, that his counsel acted outside the realm of reasonableness in advising him to accept the guilty plea: petitioner was offered five years imprisonment on charges that carried 25 years imprisonment; he was allowed to remain free on bail prior to his sentencing; and the legal issues now raised by petitioner were, both at the time of petitioner's plea and now, murky at best and at worst, wholly inadequate. Moreover, petitioner has put forth no evidence beyond his own conclusory statements to support his allegation that he would not have pled guilty but for his counsel's alleged ineffectiveness.  As a result, the Court cannot determine that petitioner's trial counsel fell below the constitutional level of effectiveness required by <u>Strickland</u>.

> ii.   <u>Assistance on Appeal of Burglary and Robbery Pleas</u>

Setting aside the fact that petitioner's ineffective assistance of appellate counsel claim is unexhausted, petitioner's claim also fails on the merits.

Petitioner's appellate counsel argued before the First Department that petitioner's sentence was excessive and that petitioner did not waive his right to appeal; petitioner's appellate counsel did not raise any other arguments. (Am. Pet. at 14; Gill 7/2/10 Decl., Ex. B.[26]) Petitioner argues that there were eight arguments his appellate could and should have raised on appeal:

---

[26] The State has failed to provide the full brief submitted to the First Department. (<u>See</u> Gill 7/2/10 Decl., Ex. A.)

> (1) [T]hat the indictment charging burglary in the first degree was defective;[27] (2) that the evidence supporting the count charging burglary in the first degree was insufficient; (3) that the conviction supporting burglary i[n t]he first degree was against the weight of the evidence; (4) that the petitioner's guilty plea to burglary i[n t]he first degree was unknowing and involuntary because petitioner did not understand the charges against him; (5) that petitioner was actually innocent of burglary i[n t]he first degree, thereby warranting reversal of the conviction; (6) that the petitioner received ineffective assistance of counsel due to the counsel's failure to attack the burglary charge at the pre-trial level, and[] (7) that defense counsel's performance at the pretrial level was not within the standard set forth in [S]trickland v. Washington.

(Am. Pet. at 14-15.)

A habeas claim for ineffective assistance of appellate counsel cannot stand on a mere showing that counsel did not advance every conceivable argument or his client's preferred arguments. Jones v. Barnes, 463 U.S. 745, 751-52 (1983). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Id.; see also Strickland, 466 U.S. at 659-60 ("There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same

---

[27] A review of the record suggests that petitioner has two main concerns about the indictment: (1) that the indictment was amended the day after his guilty plea to include 353 East 83rd Street, which is the residential building adjacent to the public parking garage where the underlying crimes took place (Gill 7/2/10 Decl., Ex. O (included as an exhibit located at ECF No. 79-2 at 21 ("Notice of Motion for Leave to Amend") ¶ 81); and (2) that the indictment was jurisdictionally defective because it provided "insufficient legal and factual reasons to charge the defendant with the commission of such crime because it fails to allege every material element of the crime of burglary in the First Degree and/or the alleging acts do not equal the crime of burglary in the First Degree." (Id. ¶¶ 17-19.) Petitioner argues that the parking garage, 351 East 83rd Street, is "structurally connected" to the adjacent apartment building located at 353 East 83rd Street (id. ¶ 63), but does not constitute a single dwelling with the apartment building.

way.") (citation omitted). Accordingly, a petitioner must show that "counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

In this case, the Court has already determined that petitioner's plea to burglary was knowing, voluntary, and intelligent and that petitioner did not receive ineffective assistance of counsel at the trial level. Accordingly, petitioner's contention that his appellate counsel should have raised these arguments is without merit.

As for petitioner's remaining claims, the Court finds them to be similarly without merit. While petitioner believes his counsel was ineffective for failing to argue that the evidence supporting the burglary charge was insufficient and that "the conviction supporting burglary i[n t]he first degree was against the weight of evidence," petitioner's appellate counsel's failure to do so in no way amounts to ineffective assistance. Not only is counsel is "strongly presumed to have rendered adequate assistance," Strickland, 466 U.S. at 689-90, but as a matter of law, appellate counsel is under no obligation to make meritless arguments before the appellate court. United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999), cert. denied, 531 U.S. 811 (2000). Petitioner's counsel may reasonably and justifiably have determined that petitioner's view of the burglary statute was not in accord with New York law or that the facts of the underlying crimes undermined petitioner's claims. Whatever counsel's motivation, there is nothing to suggest that the challenged decision by petitioner's appellate counsel – to raise the length of

32

petitioner's sentence but to abandon petitioner's other possible claims – amounts to ineffective assistance of counsel under Strickland.

### iii.   Assistance in Bail Jumping Trial Proceedings

Petitioner alleges that his counsel in the bail jumping prosecution was ineffective for failing to make a motion to dismiss on the grounds of pre-indictment delay. (See Am. Pet. at 18.)   Petitioner's claim is based on the following timeline: petitioner committed the underlying crimes in 2000; in 2002, after pleading guilty, he jumped bail; in 2004, he was involuntarily returned to court; in 2005, he was sentenced for the underlying crimes; and on March 20, 2007, petitioner was charged with first-degree bail jumping.   (8/18/11 Opp'n at 12.)[28]

The pre-indictment delay in this case did not, in and of itself, deprive petitioner of his constitutional rights, as discussed infra.   Nevertheless, even were petitioner able to demonstrate that he had a valid basis for dismissal under state law that his counsel neglected to pursue, he would not succeed under Strickland.   In order to make out an ineffective assistance of counsel claim, petitioner must first show "that his counsel's acts or omissions cannot be considered sound trial strategy" in order to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."   Harrison v. Cunningham, 512 F. App'x 40, 42 (2d Cir. 2013) (internal punctuation, quotation marks, and citation omitted).   Petitioner must then show that "there is a 'reasonable probability' that, but for the deficiency, the outcome of the proceeding would have been different." McKee v. United States, 167 F.3d 103, 106 (2d Cir. 1999) (citation omitted).

---

[28] He was arraigned on the indictment on April 4, 2007.   (8/18/11 Opp'n at 12.)

In this case, petitioner identifies a number of New York cases in support of his argument that, had his counsel moved for dismissal on the basis of pre-indictment delay, the bail jumping charge would have been dismissed. (Memorandum of Law in Response to Respondent's Memorandum of Law in Opposition to Amended Petitioner for a Writ of Habeas Corpus ("9/6/11 Mem.") at 5-6, ECF No. 39, Sept. 6, 2011).

Nevertheless, there is no indication that counsel's conduct in the bail jumping proceeding "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. There is no dispute that petitioner engaged in the bail jumping conduct with which he was ultimately charged. Moreover, the record illustrates that petitioner's counsel took steps to provide a robust defense to petitioner. For example, prior to trial, he filed an omnibus motion seeking, inter alia, suppression of petitioner's statements as involuntary, inspection of the grand jury minutes, and dismissal of the indictment. (8/18/11 Opp'n at 18.) At trial, counsel served as a legal advisor during the portion of the trial when petitioner elected to proceed pro se; upon resuming his role as counsel, counsel cross-examined the State's witnesses and presented a defense, arguing that petitioner was mentally ill and as such, his failure to appear in court for his sentencing was involuntary. (8/18/11 Opp'n at 18-19.)

Furthermore, failure to make a motion to dismiss on the grounds of pre-indictment delay does not satisfy the Strickland inquiry where there is reason to

34

conclude that the motion would not have been granted.  Bierenbaum v. Graham, 607 F.3d 36, 52 (2d Cir. 2010).  Here, both the trial court (ECF No. 18-1 at 30) and the Appellate Division (Gill 8/19/11 Decl. Ex. E) ultimately reviewed and rejected petitioner's pre-indictment delay claim.  Therefore, the Court concludes that petitioner was not prejudiced by his counsel's failure to raise the argument of pre-indictment delay in the context of his motion to dismiss.

For these reasons, petitioner's claim of ineffective assistance of counsel in the bail jumping prosecution does not merit habeas relief.

### c.  Prosecutorial Misconduct

#### i.  Prosecutorial Misconduct in the Burglary and Robbery Proceedings

Petitioner alleges that the prosecutor induced him into pleading guilty to the underlying crimes by promising him that he would need to plea only to the burglary charge but subsequently "forced [petitioner] into pleading guilty" to the attempted robbery charge.[29]  (Am. Pet. at 16.)  As discussed supra, petitioner's guilty plea to attempted robbery was clearly voluntary, knowing, and intelligent.  Furthermore, petitioner specifically testified under oath in open court that he had not been coerced into his plea:

> THE COURT:  Has anyone forced you or threatened you in any way to get you to plead guilty?
>
> MR. FREEMAN:  No.

(Plea Tr. 24.)

---

[29] Petitioner, in his original petition, alleged that "the prosecutor also selectively prosecuted the plaintiff by singling him out for prosecution for a discriminatory purpose." (Petition at 8, ECF No. 1.) Petitioner excluded that allegation, however, from his amended petition.

Of course, if petitioner had in fact been the subject of prosecutorial coercion,

he might not have been at liberty to say so in open court. Petitioner's conclusory

and self-serving allegations, however, are insufficient on their own. See United

States v. Hirsch, 239 F.3d 221, 225 (2d Cir. 2001) ("A defendant's bald statements

that simply contradict what he said at his plea allocution are not sufficient grounds

to withdraw the guilty plea.").[30]

### ii. Vindictive Prosecution in the Bail Jumping Proceedings

Petitioner alleges that he was the victim of vindictive prosecution. (Am. Pet.

at 17.) Specifically, petitioner argues: "Were it not for the prosecutor's animus

toward petitioner for having filed his CPL 440 motion, the petitioner would not have

been prosecuted for bail jumping." (Id.)

Petitioner explains:

> The petitioner committed the crime of bail jumping in
> 2002, was returned on a bench warrant in 2004, and was
> not prosecuted for bail jumping until years later in 2007;
> but only after petitioner filed his motion with the trial
> court. In 2004, the prosecutor admitted to having
> considered pursuing bail jumping charges against
> petitioner, but subsequently declined to prosecute. In
> 2007, after having filed opposition to petitioner's 440

---

[30] Based on petitioner's numerous filings, the thrust of his argument is that the prosecutor "somehow, and unknown to the [petitioner], managed to slip in an additional charge for the defendant to plead [to] without his knowing." (Gill 7/2/10 Decl, Ex. F, Affidavit in Support of Motion to Vacate Judgment Upon the Ground that the Judgment was Procured by Duress, Misrepresentation or Fraud on the Part of the Prosecution or a Court, and that the Judgment was Obtained in Violation of the Defendant[']s Rights under Constitutional Provisions ¶ 6.) Even taking this (unsupported) allegation as true, the plea transcript reveals that petitioner was fully apprised of the causes of action to which he was pleading guilty. (Plea Tr. 26-29.) Petitioner was given an opportunity to discuss those causes of action with his counsel and stated on the record that he was pleading to both crimes without coercion or duress. (Id. at 24-25.) The Court credits petitioner's affirmation, under oath, that he chose to plead guilty to both counts voluntarily and free from coercion.

[m]otion on 3/20/07, the prosecutor then charged petitioner with bail jumping, also on 3/20/07.[31]

(Id.)

Prosecutors have "broad discretion" to determine whether to prosecute; "a prosecutor's pretrial charging decision is presumed legitimate." United States v. Sanders, 211 F.3d 711, 716 (2d Cir. 2000). "In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978). That being said, "to punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, and a prosecution brought with a vindictive motive, penalizing those who choose to exercise constitutional rights, would be patently unconstitutional." Sanders, 211 F.3d at 716.

To prevail on a claim of vindictive prosecution, petitioner must either show "actual vindictiveness" or raise a presumption of vindictiveness, which the government may then rebut by objective evidence. United States v. Johnson, 171 F.3d 139, 140 (2d Cir. 1999) (per curium) (citations omitted); see also, e.g., United States v. White, 972 F.2d 16, 19 (2d Cir. 1992).

To show actual vindictiveness, petitioner must show: "(1) the prosecutor harbored genuine animus toward the defendant, or was prevailed upon to bring the charge by another with animus such that the prosecutor could be considered a

---

[31] At that time, petitioner had approximately three-and-a-half years left on his sentence for the underlying crimes.

37

'stalking horse,' and (2) the defendant would not have been prosecuted except for the animus." Sanders, 211 F.3d at 716-17.

"To establish a presumption of prosecutorial vindictiveness, the defendant must show that the circumstances of a case pose a realistic likelihood of such vindictiveness." Id. at 717 (internal quotation marks and citation omitted); see White, 972 F.2d at 19 (explaining that a rebuttable presumption of prosecutorial vindictiveness "stems from [cases] where the Supreme Court was concerned with the danger that a prosecutor may be inclined to punish a defendant for obtaining a retrial by appeal."). However, "[i]t is not enough for the defendant to establish that a prosecutor acted after the exercise of a right." United States v. Tillman, No. 10 Cr. 127, 2010 WL 3000189, at *4 (S.D.N.Y. July 30, 2010) (citation omitted). "Rather, the appearance of vindictiveness only occurs where, 'as a practical matter, there is a realistic or reasonable likelihood of prosecutorial misconduct that would not have occurred but for hostility or a punitive animus towards the defendant because he has exercised his specific legal rights.'" Id. (citing United States v. Gallegos-Curiel, 681 F.2d 1164, 1169 (9th Cir. 1982) (alterations omitted)).

In support of his claim, petitioner relies on timing – the State waited over two years to file the bail jumping indictment; it allegedly filed the indictment following the filing of petitioner's motion to vacate the underlying judgment. (Am. Pet. at 17.)[32] Notably, petitioner does not argue that the prosecutor lacked probable

---

[32] Elsewhere in the record, petitioner suggests that "the prosecutor also selectively prosecuted the plaintiff by singling him out for prosecution for a discriminatory purpose." (Pet. at 8, ECF No. 1, Oct. 19, 2009.) Since this allegation is not contained in petitioner's amended petition – nor is it supported elsewhere in the record – the Court need not take it up at this juncture.

cause to file the indictment, nor does petitioner contend that the prosecutor acted vindictively at any point during the bail jumping proceedings themselves. Rather, petitioner's claim is limited to his own conclusory allegations, combined with the fact that the prosecutor brought the bail jumping indictment around the time when petitioner was challenging his guilty plea to the underlying crimes. This is insufficient to show either actual vindictiveness or to trigger a rebuttable presumption of vindictive motive – there is nothing to suggest a "realistic likelihood" of prosecutorial misconduct.

Thus, while it would have perhaps been most prudent for the State to have brought the bail jumping charge in a more timely fashion, there is no reason for this Court to find that it had a vindictive purpose in ultimately doing so. See Goodwin, 457 U.S. at 382 n. 14 (nothing that prosecutors are not infallible and that there are "practical restraints imposed by often limited prosecutorial resources" that may result in prosecutors failing to bring "every conceivable charge against an individual" at the outset).

### iii.   Improper Pre-Indictment Delay

Petitioner alleges, as a separate point from prosecutorial vindictiveness, that he was prejudiced by the State's delay in charging him with bail jumping. (Am. Pet. at 17-18.)

The Supreme Court has indicated that pre-indictment delay may deprive defendants of their right to due process; to successfully prove a constitutional

deprivation, however, there must be a showing that the defendant was actually prejudiced by the delay or that the State intentionally delayed the prosecution to harass or gain a tactical advantage. United States v. Marion, 404 U.S. 307, 325 (1971); see also United States v. Cornielle, 171 F.3d 748, 752 (2d Cir. 1999) (criminal prosecutions brought within the statutory limitations period "are only rarely dismissed" and enjoy "a strong presumption of validity").[33]

In this case, there is nothing to suggest that petitioner was either prejudiced by the delay or that the State intentionally delayed the prosecution in bad faith. Petitioner argues in supplemental submissions that he was prejudiced by the delayed prosecution because the delay: (1) impeded the possibility of obtaining a concurrent sentence; (2) caused petitioner anxiety that "disrupted and tarnished" his "goals toward self-improvement and rehabilitation" while in prison; and (3) was effectuated as a tactical decision in an afford to extend petitioner's underlying sentence. (9/6/11 Mem. at 2-3.) These arguments lack merit.[34]

First, petitioner's five-and-a-half year sentence for the underlying crimes began on March 16, 2005. (7/2/10 Opp'n at 8.) The state initiated the bail jumping proceeding on March 20, 2007, when petitioner still had about three-and-a-half years remaining on his underlying sentence; petitioner was sentenced for bail jumping on October 31, 2007, with nearly three years remaining on his underlying

---

[33] Petitioner makes extensive arguments on this point based on New York law, which articulates a somewhat different standard for pre-indictment delay. This issue is addressed in connection with petitioner's ineffective assistance of counsel claim.

[34] Petitioner also argues that he was prejudiced because the bail jumping charge was brought in retaliation for his efforts to vacate the judgment against him in the burglary and robbery proceeding. (9/6/11 Mem. at 2.) This claim, more properly construed as one for prosecutorial vindictiveness, fails for all of the reasons discussed supra.

sentence. (8/18/11 Opp'n at 5.) The sentence imposed for bail jumping was one year and eight months to five years imprisonment, to run consecutively with the underlying sentence. (Id.) Thus, had the bail jumping court desired to have petitioner's bail jumping sentence run concurrently with the remainder of petitioner's sentence for the underlying crimes, it could have done so. Furthermore, this Court rejects petitioner's argument as a matter of law, as it gives rise to the implication that any delay in bringing charges against an individual serving an independent sentence, for a different crime, is prejudicial. See Marion, 404 U.S. at 325 ("Appellees rely solely on the real possibility of prejudice inherent in any extended delay: that memories will dim, witnesses become inaccessible, and evidence be lost. In light of the applicable statute of limitations, however, these possibilities are not in themselves enough to demonstrate that appellees cannot receive a fair trial and to therefore justify the dismissal of the indictment."); Cornielle, 171 F.3d 748 at 751 (explaining that "the statute of limitations is the primary guarantee against bringing overly stale criminal charges").

As for petitioner's argument that he was prejudiced because the pre-indictment delay caused him anxiety and negatively impacted his ability to pursue rehabilitation (see 9/6/11 Mem. at 2), this allegation does not justify a determination that the pre-indictment delay resulted in any legally-cognizable prejudice. Petitioner jumped bail; the fact that he ultimately was held accountable for that crime and that it caused him emotional distress is a problem of petitioner's own making. In any event, it does not amount to a constitutional violation.

Last, petitioner's allegation that the decision to charge him with bail jumping was a tactical decision made to extend petitioner's sentence for the underlying crimes (see 9/6/11 Mem. at 3) strikes the Court as indistinguishable from the argument that the bail jumping prosecution was motivated by animus, which the Court rejects as discussed supra.

## VII.   CONCLUSION

For the reasons set forth above, the Court DENIES petitioner's request for habeas relief.

Since petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253(c). Pursuant to 28 U.S.C. § 1915(a)(3), any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of any appeal. Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is hereby directed to dismiss the pending petition and terminate this action.


SO ORDERED.

Dated:   New York, New York
         July 14, 2014

_____
KATHERINE B. FORREST
United States District Judge

CC:
Rodney Freeman
1770 Bruckner Blvd. #2G
Bronx, NY 10473-3771
PRO SE

42